**Leonard S. GOODMAN, Petitioner,**

v.

**PUBLIC SERVICE COMMISSION of the
District of Columbia, Respondent,**

**Potomac Electric Power Company,
Intervenor.**

**No. 6854.**

District of Columbia Court of Appeals.

Argued Feb. 26, 1973.

Decided Sept. 4, 1973.

Leonard S. Goodman pro se.

C. Belden White, II, Asst. Corp. Counsel, Washington, D.C., with whom C. Francis Murphy, Corp. Counsel, and Linus H. Deeny, Asst. Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Cameron F. MacRae, Washington, D.C., with whom Stephen A. Trimble, Washington, D. C., Richard W. Emory, and George W. Warlick, Washington, D. C., were on the brief, for intervenor.

Before FICKLING, YEAGLEY and HARRIS, Associate Judges.

HARRIS, Associate Judge:

On July 28, 1972, the Public Service Commission of the District of Columbia issued an order granting Potomac Electric Power Company (Pepco) rate increases totaling $12,516,000 annually for its retail sales of electric energy within the District of Columbia. Petitioner, a residential customer of Pepco, sought reconsideration of that order. His petition was denied, following which he sought review in this court pursuant to D.C.Code 1972 Supp., § 43–705.[1] We affirm the actions of the Commission.

I

The procedural history of the case and petitioner's relationship to it should be described briefly. Pepco filed its rate increase application with the Commission on July 12, 1971. The application sought an increase of approximately $24.7 million in gross operating revenues annually, which theoretically would have resulted in an 8.5 percent rate of return. Public notice of the filing and content of the application was given on August 11, 1971, with all interested parties being afforded an opportunity to make representations concerning it by September 3, 1971. Numerous parties sought and were granted intervention; petitioner to that point was silent.

A two-phase proceeding was begun. Phase I dealt with Pepco's overall operating results, revenue requirements, and rate of return. A test year ended October 31, 1971, was utilized. Extensive hearings were conducted, briefs were filed, and oral

---

1. The review stages of the proceeding did not begin smoothly. Prior to the effective date of the District of Columbia Court Reorganization Act of 1970 (February 1, 1971), jurisdiction to review orders of the Commission was vested in the United States District Court for the District of Columbia. When the Commission issued its final order in this case, pending in the District Court was an effort by petitioner to upset a 1970 Pepco rate increase order. Petitioner initially sought review of the proceedings now before us in the District Court. Motions to dismiss that case (D.D.C. CA No. 1833–72) were filed, arguing that exclusive jurisdiction over the review of Commission actions now is in this court.

Petitioner then initiated this case. Simultaneously, he filed a motion to dismiss his own appeal, seeking to have the entire matter considered in the District Court. The District Court later dismissed its case involving the rate increase now before us, and this court denied petitioner's motion to dismiss. Subsequently, the District Court affirmed the 1970 order of the Commission. (D.D.C. CA No. 1777–70, Jan. 22, 1973.)

argument was conducted. On May 9, 1972, the Commission issued its Proposed Findings, Opinion and Order (Order No. 5509). It contemplated gross revenue increases for Pepco of approximately $12.5 million annually, which would provide a 7.84 percent rate of return. The Commission directed the submission of appropriate revised rate schedules to achieve such a result, which were to be considered in Phase II of the proceeding.

■ Eight days later, petitioner was heard from for the first time. He filed a petition to intervene on May 17, 1972; it was denied as untimely. After the Commission's final Findings, Opinion and Order (Order No. 5521) was issued on July 28, 1972, petitioner sought reconsideration thereof. Notwithstanding the glaring tardiness of the expression of petitioner's views, their merits were considered carefully by the Commission. They were denied by Order No. 5530 on September 8, 1972. None of the parties who participated in the hearing sought either reconsideration by the Commission or appellate review of the agency's actions; petitioner stands alone.[2]

II

■ The scope of our review of actions of the Commission is delineated by D.C. Code 1967, § 43–706. Review is limited to questions of law; the Commission's findings of fact are to be deemed conclusive unless found to be unreasonable, arbitrary, or capricious. Essentially, petitioner presents to us the same challenges to the

Commission's rate increase order which he raised unsuccessfully in his petition for reconsideration.[3] We consider each in turn.

(i) Utilization of a test year provides an indispensable frame of reference for the submission and consideration of relevant data in a rate case. Any test year is inherently imperfect, and reasonable efforts must be made to normalize manifestly atypical data.

■ Petitioner's first argument is that the summer included in Pepco's test year was abnormally cool, resulting in lower revenues for the company due to reduced demand for energy for air conditioning. He contends that gross test year revenues accordingly should be normalized by the addition of $18 million (less the theoretical costs of producing such theoretical revenues) to reflect this circumstance.

There was no probative evidence as to what constitutes a "normal" Washington summer nor as to the extent to which the summer of 1971 deviated therefrom. No party to the proceeding urged any such adjustment of test year data, although the record reflects an awareness that the summer was not one of the city's worst. The Commission's unwillingness to accept petitioner's argument on this point, in light of the state of the record to which petitioner made no contribution, was not unreasonable, arbitrary, or capricious.

(ii) Pepco has a generating station on the Potomac River near Morgantown, Maryland. It is a comparatively low-cost

---

2. This is the second consecutive Pepco rate case in which petitioner has pursued the same tactics. He refrained from participating in the hearings, and then sought both reconsideration and judicial review of the results reached by the Commission.

Seeking reconsideration is a jurisdictional prerequisite to filing an appeal. D.C.Code 1967, § 43–704. However, under our statutes, one need not have been a party to the proceeding before the Commission to seek reconsideration; one need only be affected by the order in question. *Ibid.* Hence no challenge has been directed to petitioner's standing. In proceedings under the Federal Power Act and the Natural Gas Act, by way of comparison, only a party to the agency proceeding may seek reconsideration and judicial review. 16 U.S.C. § 825*l*(a) (1970); 15 U.S.C. § 717r(a) (1970).

3. For of the arguments advanced in this case were presented in substantially identical form to the District Court by petitioner in his efforts there to set aside Pepco's 1970 rate increase.

producer of energy which has been involved in the sale of power by Pepco to other members of the Pennsylvania-New Jersey-Maryland Interconnection (PJM).[4] Generator Unit No. 1 at Morgantown was out of service during a major portion of the test year.[5] That unusually extended outage necessitated normalizing adjustments. The Commission's Staff sought to adjust test year data to put Pepco in the position in which it would have been if the outage had not occurred.

■ Additional data entered into the Commission's resolution of this problem. During another portion of the test year (June through October of 1971), Pepco sold energy from its Morgantown station directly to Baltimore Gas & Electric Company (BG&E). The Commission's Staff also sought to reduce certain Morgantown expense items to reflect the sales to BG&E. Pepco opposed the Staff's related positions, arguing in part that other unusual circumstance made a complete normalization of the PJM sales unwarranted and in part that the same capacity could not have been sold simultaneously to both PJM and BG&E. With expressed regret, the Commission accepted Pepco's argument that an adjustment for the BG&E sales must be accompanied by a reduction in the adjustment for the Unit No. 1 outage.

Petitioner now replows the ground thus covered by Staff in the proceeding below. There is evidence to support his argument; the Commission's Chief Accountant testified that Staff's requested adjustments were not duplicative. However, there was substantial evidence to the contrary which supports the Commission's conclusion.

■ This court has an obligation to analyze the record to determine the possible presence of arbitrary action. Arbitrary action, however, is action not based on facts or reason. Mississippi River Fuel Corp. v. Federal Power Commission, 82 U.S.App.D.C. 208, 163 F.2d 433 (1947). The burden upon petitioner is not merely to put forth an acceptable alternative but rather to demonstrate clearly and convincingly a fatal flaw in the action taken. *See* Capital Transit Company v. Public Utilities Commission, 93 U.S.App.D.C. 194, 213 F.2d 176 (1953), cert denied, 348 U.S. 816, 75 S.Ct. 25, 99 L.Ed. 643 (1954). Petitioner has not met that burden. He simply asserts a difference of opinion with the Commission. There has been no meaningful showing that the Commission was erroneous in its conclusion.

■ (iii) As would be expected, the record demonstrates that in future years Pepco will need significant additions to its plant to enable it to meet the needs of its customers. Petitioner argued to the Commission that the additional net operating revenues which could be expected to be generated by such future plant would obviate the need for a present rate increase. In advancing such views, petitioner goes well beyond the framework of the test year. The record contains no projected revenues or expenses for the operation of post-test year facilities, so no meaningful determination of projected incremental net operating revenues attributable thereto would be possible even if it were appropriate.

The argument thus advanced in this case is but a repetition of a similar argument which petitioner presented in challenging Pepco's 1970 rate increase. It was carefully considered by the Commission in both cases. The Commission's rejection of it certainly was not unreasonable, arbitrary, or capricious.

■ (iv) At any given time, a utility is almost certain to have a significant amount

---

4. PJM is an interconnection of 12 eastern electric power companies which cooperate in the exchange of energy in an effort to achieve greater efficiency and reliability.

5. Morgantown Unit No. 1 was out of service from November 29, 1970, to June 24, 1971. Morgantown Unit No. 2 was placed in service for the first time on June 1, 1971.

of money which has been expended on plant still under construction. Such funds are spent for the ultimate benefit of the utility's customers. In a rate case, some method must be utilized to handle such expenditures. There are two generally accepted alternatives. Either the interest on funds so committed may be capitalized, or the actual cost of construction work in progress may be included in the utility's rate base.

Pepco's cost of plant under construction for the test year was $29.9 million. Consistent with its prior policy, the Commission included this amount in the rate base. Petitioner argues that the Commission should have capitalized interest expense instead. We reiterate that it is not our responsibility to choose among acceptable alternatives, but rather to determine whether the technique utilized is just and reasonable. Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944). The Commission, like various other regulatory bodies, consistently has included construction work in progress within rate base in the past.[6] In no sense could that exercise of informed judgment be considered unreasonable, arbitrary, or capricious.

■ (v) The final step in the computations made in Phase I of the proceeding before the Commission was the determination of an allowance for the additional income and franchise taxes to be paid by Pepco as a consequence of a rate increase. The Commission concluded that the company was entitled to earn $5,811,000 in additional net income. Since that figure represents incremental net revenue needs, by definition it is to be treated as an after-tax rather than a before-tax item. The Commission applied a composite 53.57 percent

federal and District of Columbia tax factor to the $5,811,000, and determined that the company actually would need $12,516,000 in additional operating revenues to realize the necessary after-tax increase.

Petitioner quarrels with the Commission's application of the statutory federal income tax rate of 48 percent to the incremental net operating revenue figure, noting that in recent years Pepco's overall effective income tax rate has been considerably less that the statutory rate. This has been due to a number of factors, including the fact that the company's net operating income consistently has been lower than projected. However, that is basically irrelevant, accepting the validity of the test year concept. Once all other deductible expenses have been taken into account in the test year computations, the only tax rate which reasonably may be applied to pure incremental net operating income is the statutory rate.

Petitioner advanced the same argument to the Commission when he sought reconsideration of Pepco's 1970 rate increase. His argument was rejected then, and its rejection once again in this proceeding was reasonable and proper.

(vi) Pepco operates a unified system which provides retail service in the District of Columbia, Maryland, and Virginia, making it necessary for Pepco to submit a jurisdictional cost allocation.[7] Pepco's presentation was computed in reliance upon the average and excess demand method. With minor exceptions, the company's proposed allocation was endorsed by the Staff and was accepted by the Commission.

■ Petitioner has submitted data intended to show a greater rate of growth in

---

6. *See, e. g.,* Re Potomac Elec. Power Co., 28 P.U.R.3d 206 (1959); Baltimore Gas & Elec. Co. v. People's Counsel, 220 Md. 373, 152 A.2d 825 (1959).

7. Its sales in Virginia are relatively minor. In addition to its retail sales, Pepco also sells electric energy at wholesale to the Southern Maryland Electric Cooperative, Inc.

energy demand in Montgomery and Prince George's counties in Maryland than in the District of Columbia. From this, he argues that the Commission should have allocated the rate increase on the basis of rate of growth. The Commission's unwillingness to do so, he contends, unfairly and irrationally discriminates against District of Columbia customers to the benefit of suburban customers.

No party to the proceeding before the Commission took the position espoused by petitioner, nor does he cite any authority which supports it. To be sure, the difficult task of interjurisdictional allocation must be accomplished with care and fairness, and District of Columbia customers of Pepco should not be called upon to subsidize customers in other jurisdictions. *See* Capital Transit Co. v. Public Utilities Commission, *supra.* Nonetheless, we fail to discern any infirmities in the method adopted by the Commission. A jurisdictional cost allocation based upon cost of service is hardly novel; it repeatedly has been used by regulatory bodies and approved by reviewing courts.[8] Petitioner's arguments in favor of growth in demand as the controlling factor in jurisdictional cost allocation may have superficial appeal to residents of the District of Columbia, but that does not make the Commission's conclusions to the contrary unreasonable, arbitrary, or capricious.

### III

We conclude that the Commission committed no error of law in adopting the orders appealed from, and that its findings of fact are not unreasonable, arbitrary, or capricious. The orders are affirmed, and the appeal is dismissed.

8. *See generally* Colo. Interstate Gas Co. v. FPC, 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206 (1945) ; City of Detroit v. FPC, 97 U.S. App.D.C. 260, 230 F.2d 810 (1955), cert. denied, 352 U.S. 829, 77 S.Ct. 37, 1 L.Ed.2d 48 (1956) ; Miss. River Fuel Corp. v. FPC, *supra.* For a discussion by the Maryland Public Service Commission of Pepco's jurisdictional cost allocation factors, see 83 P.U.R. 3d 372, 384–87 (1970).