UNITED STATES, Petitioner,

v.

PUBLIC SERVICE COMMISSION OF the DISTRICT OF COLUMBIA, Respondent,

The Chesapeake and Potomac Telephone Company, Office of People's Counsel, Intervenors.

No. 82–988.

District of Columbia Court of Appeals.

Argued Nov. 17, 1982.

Decided Aug. 18, 1983.

William G. Cole, Atty., Dept. of Justice, Washington, D.C., with whom Stuart E. Schiffer, Deputy Asst. Atty. Gen., Stanley S. Harris, U.S. Atty., and Lawrence A.G. Moloney, Atty., Dept. of Justice, Washington, D.C., were on briefs, for petitioner.

Lloyd N. Moore, Jr., Washington, D.C., for respondent.

D. Michael Stroud, with whom, Washington, D.C., Lee A. Satterfield, Mark J. Mathis, and Robert A. Levetown, Washington, D.C., were on briefs, for intervenor, The Chesapeake and Potomac Telephone Co.

Joseph N. Sharlitt, Washington, D.C., with whom Brian Lederer, People's Counsel, and Elizabeth Noel, Deputy People's Counsel, Washington, D.C., were on briefs, for intervenor, People's Counsel.

Before PRYOR and TERRY, Associate Judges, and BARNES, Associate Judge, Superior Court of the District of Columbia.[1]

PRYOR, Associate Judge:

On November 12, 1981, the Chesapeake & Potomac Telephone Company (hereinafter C & P) filed an application with the Public Service Commission of the District of Columbia (hereinafter PSC or Commission), designated Formal Case No. 777, requesting permanent authority to increase its schedule of rates and tariffs for telephone service in the District of Columbia by $132.1 million dollars. The People's Counsel was authorized to represent the consumers of the District of Columbia; as a matter of right, however, intervention was granted to the United States General Services Administration (hereinafter GSA) by PSC Order No. 7459.[2] GSA appeals from a settlement agreement approved by the Commission over its objection which granted C & P a rate increase of $40.3 million dollars. We reject petitioner's claims and affirm the orders of the PSC on all challenged grounds.

FACTS AND PROCEDURAL HISTORY

When C & P filed its application for an increase in rates, all parties and intervenors, with the exception of GSA, agreed to a settlement of the revenue portion of the case, with the understanding that numerous rate design issues would be tried while the rate increase went into effect. A joint motion for approval of the settlement proposal was filed on March 17, 1982, just before the following scheduled events were to have taken place: the filing of initial expert testimony; the filing of expert rebuttal testimony; and hearings to include cross-examination of all company and intervenor witnesses on their pre-filed testimony. GSA then filed a written objection to the settlement proposal, contending that a trial-type hearing was necessary to explore disputed issues.

A hearing with a right of cross-examination of *all* expert witnesses was not afforded to GSA. However, a hearing was held on April 6, 1981, at which each intervenor was permitted to present one witness to testify as to whether approval of the joint settlement motion was in the public interest. The Commission thereafter published Final Order No. 7546, granting C & P a rate increase of $40.3 million dollars, less than one third of its original request. The final order was approved by all parties and intervenors, with the exception of GSA, and rate design hearings were scheduled to begin immediately.

GSA appeals from Final Order No. 7546, and from Order No. 7603, in which GSA's

1. Sitting by designation pursuant to D.C.Code § 11–707(a) (1981).

2. Intervention was also granted to the Committee for Equitable Telephone Rates; the D.C. Telephone Answering Service Committee; the Apartment & Office Building Association of Metropolitan Washington; Security Concepts, Inc.; the Hotel Association of Washington; American Broadcasting Companies; MCI Telecommunications Corporation; and United States Transmission Systems. Throughout the record and briefs submitted to this court, GSA has loosely been referred to as a "party," however, the record indicates that its status below was that of an intervenor.

application for reconsideration of the revenue requirements order was denied.

## SCOPE OF REVIEW

■ In analyzing GSA's contentions, we realize that Congress has delegated rate-making authority to the Commission, not to this court, and we therefore accord great deference to the expertise and decisions of the Commission. *Washington Gas Light Co. v. Public Service Commission,* 450 A.2d 1187, 1193 (D.C.1982) (per curiam). We have repeatedly stated that "[o]ur review of a utility commission order is the narrowest judicial review in the field of administrative law." *Id.,* citing *Potomac Electric Power Co. v. Public Service Commission,* 402 A.2d 14, 17 (D.C.) (en banc), *cert. denied,* 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979).

■ In keeping with the tenor of D.C. Code § 43–906 (1981), our scope of review is limited to "questions of law, including constitutional questions; and the findings of fact by the Commission shall be conclusive unless it shall appear that such findings of the Commission are unreasonable, arbitrary or capricious." In examining PSC Order No. 7459, our role is to determine whether its overall impact is just and reasonable, *People's Counsel v. Public Service Commission,* 399 A.2d 43, 46 (D.C.1979), and to insure that the "... Commission has respected procedural requirements, has made findings based on substantial evidence, and has applied the correct legal standards to its substantive deliberations." *Potomac Electric Power Co. v. Public Service Commission, supra,* 402 A.2d at 18, quoting *Williams v. Washington Metropolitan Area Transit Commission,* 134 U.S.App.D.C. 342, 362, 415 F.2d 922, 942 (1968), *cert. denied,* 393 U.S. 1081, 89 S.Ct. 860, 21 L.Ed.2d 773 (1969).

■ Rate-making orders are presumptively valid, and, unless GSA can carry its heavy burden of demonstrating that a "fatal flaw" exists in the action taken, Final Orders Nos. 7546 and 7603 will not be disturbed. *Washington Gas Light Co. v. Public Service Commission, supra,* 450 A.2d at 1194. *See also People's Counsel v. Public Service Commission,* 455 A.2d 391 (D.C. 1982), citing *Goodman v. Public Service Commission,* 309 A.2d 97, 101 (D.C.1973).

## I.

■ The central issues presented on appeal are whether the Public Service Commission can authorize a nonunanimous settlement, and, if so, what procedures it must follow to remain within the spirit of the D.C. Administrative Procedure Act (codified at D.C.Code § 1–1509 (1981)). This court has recognized that the Commission has both the flexibility to consider settlement offers and the responsibility to evaluate such offers "on their merits in light of the evidence of record even if the proposed settlement fails to receive the unanimous support of the parties." *Metropolitan Washington Board of Trade v. Public Service Commission,* 432 A.2d 343, 363 n. 40 (D.C.1981). *See also Placid Oil Co. v. Federal Power Commission,* 483 F.2d 880, 893 (5th Cir.1973), *aff'd sub nom. Mobile Oil Co. v. Federal Power Commission,* 417 U.S. 283, 94 S.Ct. 2328, 41 L.Ed.2d 72 (1974). This is a logical, efficacious approach to dispute resolution which is often used in other forums. We think it is clear that the Commission is not bound to hold a hearing on every question and does have the authority to impose a settlement which is substantially acceptable to most, if not all, of the parties.

■ Having concluded that the Commission has the authority to act on a nonunanimous settlement, we now turn to the appropriate procedural requirements. This question has been considered by the Supreme Court:

"If a proposal enjoys unanimous support from all of the immediate parties, it could certainly be adopted as a settlement agreement if approved in the general interest of the public. But even if there is a lack of unanimity, it may be adopted as a resolution *on the merits,* if ... [the Commission] makes an independent find-

ing supported by 'substantial evidence on the record as a whole' that the proposal will establish 'just and reasonable rates' for the area." *Mobil Oil Co. v. Federal Power Commission, supra,* 417 U.S. at 314 [94 S.Ct. at 2348], citing *Placid Oil Co. v. Federal Power Commission, supra,* 483 F.2d at 893. (Emphasis in original.) [3]

The Commission, in this instance, did make the requisite independent inquiry of record, at its hearing of April 6, 1981, to determine whether the settlement proposal was in the public interest. GSA contends that the hearing was inadequate and failed to comply with the local statute.

There is no question that in the District of Columbia an application for a rate increase by a public utility requires that a hearing be held before the Commission. The statutory requirement for a hearing can be found in D.C.Code § 1–1509(b) (1981) which provides that "[e]very party shall have the right to present in person or by counsel his [or her] case or defense by oral and documentary evidence, to submit rebuttal evidence, and *to conduct such cross-examination as may be required for a full and true disclosure of the facts.*" (Emphasis added.) *See also* D.C.Code §§ 43–608, –601(d) (1981).

■ Although GSA was given the right to participate at the April 6, 1981 hearing, it argues that it was denied the opportunity to cross-examine thirty-three witnesses who had submitted pre-filed testimony, and that the Commission thereby ignored the requirements of a "formal hearing." While GSA's opportunity to cross-examine witnesses may have been limited, some cross-examination was permitted. A bifurcated proceeding concerning only the issues of revenue requirements, as presented in the settlement proposal, was held, and rate design hearings were scheduled to begin on·

April 15, 1982. As an intervenor, GSA was permitted to have one witness testify as to whether approval of the joint settlement motion was in the public interest.[4] In addition, all participants were afforded the opportunity to submit pre-filed and supplemental testimony and to conduct discovery.

GSA raised its objections to the proposed order at the time of the hearing, and again when it filed an application for reconsideration of the proposed order. At the April 6, 1982 hearing, GSA sought to explore "what it believed to be a large number of disputed issues" concerning depreciation, repression, and rate of return. It was not until filing an application for reconsideration of the approved settlement agreement that GSA identified 21 specific issues for consideration.

The Commission found that GSA's application for reconsideration did not present a factual dispute sufficient to warrant a full evidentiary hearing. GSA's witness had testified on two of the same issues, rate of return and depreciation, that GSA offered as a basis for a second hearing. Another ground for GSA's application, repression, was withdrawn by C & P as part of the settlement discussions.

GSA's testimony opposing the rate increase fully outlined its objections and was sufficiently comprehensive so that cross-examination by GSA would not have further elucidated the issues. Moreover, GSA has yet to enunciate what it hoped to accomplish had the Commission allowed further cross-examination on its submitted list of "unresolved major issues."

The procedural rights afforded an intervenor in rate-making proceedings have been described by the Supreme Court:

If the petitioners were admitted as intervenors ... they might, of course, be admitted to participation in the proceed-

---

3. Petitioner suggests that *Mobile Oil Corp. v. Federal Power Commission* is inapposite here because the settlement in that case was submitted after an "immense administrative record had been compiled." We do not find petitioner's argument to be persuasive.

4. GSA is the only party seeking to challenge the procedures followed by the Commission in Formal Case No. 777.

ing upon reasonable terms; and one of the most usual procedural rules is that an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding. . . . It would seem then that in the absence of clear legislative mandate to the contrary, the petitioners should not possess greater rights than other intervenors.

*Vinson v. Washington Gas Co.,* 321 U.S. 489, 498, 64 S.Ct. 731, 735, 88 L.Ed. 883 (1944). We conclude that the hearing of April 6, 1982 was adequate, consistent with the statutory requirement, and that the decision to grant C & P its rate increase is based on substantial evidence of record.

## II

■ GSA challenges the Commission's denial of its application for reconsideration on the ground that the Commission unlawfully extended the period in which to accept or deny such application. Pursuant to D.C. Code § 43–904 (1981), an application for reconsideration must be granted or denied within a thirty-day period.[5] Instead, the Commission extended the period an additional thirty days by Order No. 7594, and subsequently denied the request.

The Commission relied on *California Co. v. Federal Power Commission,* 411 F.2d 720 (D.C.Cir.1969) in extending the time for its ruling. In that case the court addressed a similar 30-day time period for applications for rehearing contained in the Natural Gas Act. The court decided that the Federal Power Commission had the power to act on the merits of applications for rehearing beyond the 30 day period after the filing of the application so long as the Commission notified the applicant of its intent to delay consideration. The court found that it was unlikely that Congress would have intended to prevent the Commission "from giving careful and mature consideration to the multiple, and often clashing, arguments set out in applications for rehearing in complex cases such as this one." *Id.* at 72. We see no reason not to allow the Public Service Commission the same extended time for reasoned and deliberate consideration of applications for reconsideration. We find that the Public Service Commission acted lawfully in the circumstances presented by this complex case.

Accordingly, the decision of the Commission is hereby

*Affirmed.*

TERRY, Associate Judge, concurring in the result:

I join reluctantly in affirmance, but only because the issues raised here were not raised below until after the damage was done. In my judgment the procedure by which a settlement was imposed in this case on an unwilling GSA reeked of unfairness. The Commission's decision to limit GSA to the presentation of one witness, in particular, strikes me as arbitrary and capricious, and the exclusion of GSA from the settlement negotiations is utterly indefensible. GSA, after all, is C & P's largest customer, and its interests differ markedly from those of any other consumer of C & P's services.[1] As I read this record, those interests were not given adequate consideration by the Commission. On the other hand, GSA did

---

5. D.C.Code § 43–904 (1981) reads in pertinent part:
   (b) Any public utility or any other person or corporation affected by any final order or decision of the Commission may, within 30 days after the publication thereof, file with the Commission an application in writing requesting a reconsideration of the matters involved, and stating specifically the errors claimed as grounds for such reconsideration. . . . The Commission, within 30 days after the filing of such application, shall either grant or deny it. Failure by the Commission to act upon such application within such period shall be deemed a denial thereof. . . .

1. I seriously doubt whether the Office of People's Counsel, which purports to represent all consumers in the District of Columbia, can ever adequately represent the interests of a consumer such as GSA, which are likely to be at odds with the interests of its other "clients."

not articulate before the Commission what it hoped to accomplish by cross-examining the thirty-three witnesses who had prefiled their testimony, and even in this court it has not done so. If it had proffered (or filed) any testimony on the issues which it now claims were unresolved, this might well be a different case.

I agree with Part II of the court's opinion.