**FTC COMMUNICATIONS, INC., RCA Global Communications, Inc. and Western Union International, Inc., Petitioners,**

**v.**

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents,**

**ITT World Communications Inc., TRT Telecommunications Corp. and the Western Union Telegraph Company, Intervenors.**

No. 187, Docket 83–4217.

United States Court of Appeals, Second Circuit.

Argued Sept. 10, 1984.

Decided Dec. 17, 1984.

John S. Kinzey, Jr., New York City (Grant S. Lewis, LeBoeuf, Lamb, Leiby & MacRae, New York City, Peter M. Andersen, Secaucus, N.J., for intervenor ITT; Roger P. Newell, New York City, for petitioner FTC; Francis J. DeRosa, New York City, for petitioner RCA; Roderick M. Mette, Washington, D.C., for intervenor

TRT; Robert Michelson, Washington, D.C., for petitioner Western Union Int'l, of counsel), for petitioners and supporting intervenors.

John E. Ingle, Deputy Associate Gen. Counsel, FCC, Washington, D.C. (Bruce E. Fein, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, Carl D. Lawson, Jane E. Mago, FCC, J. Paul McGrath, Asst. Atty. Gen., John J. Powers, III, Margaret G. Halpern, U.S. Dept. of Justice, Washington, D.C., of counsel), for respondents.

Edward Berlin, Washington, D.C. (Thomas M. Lemberg, Swidler, Berlin & Strelow, Joel Yohalem, H. Richard Juhnke, Arthur H. Simms, Peter G. Wolfe, The Western Union Telegraph Co., Washington, D.C., of counsel), for intervenor The Western Union Telegraph Co.

Before: MANSFIELD, MESKILL and KEARSE, Circuit Judges.

MESKILL, Circuit Judge:

Petitioners FTC Communications Inc., RCA Global Communications, Inc., Western Union International, Inc. and intervenors ITT World Communications Inc. and TRT Telecommunications Corporation (collectively the IRCs) petition for review of a final decision of the Federal Communications Commission (Commission), *In re The Western Union Telegraph Co.,* 95 F.C.C.2d 881 (1983) (*Final Decision*). The *Final Decision* set aside the initial decision of the administrative law judge (ALJ) which found that The Western Union Telegraph Company's (WU) public Telex and TWX rates were unreasonable, determined that the IRCs were entitled to a twenty-five percent discount from the public rates and ordered WU to refund over $75 million to the IRCs. *In re The Western Union Telegraph Co.,* FCC 82D–14 (Mar. 10, 1982) (*Initial Decision in Phase I of CC Docket No. 78–97*) (*Initial Decision*), reprinted in J.App. at 113. In overturning the *Initial Decision,* the Commission found that WU's public Telex and TWX rates were reason-

able and that the IRCs were not entitled to a discount from those rates. In their petition for review, the IRCs claim that in reaching this result the Commission exceeded its statutory authority, failed to make prerequisite findings and acted arbitrarily and capriciously. For the reasons that follow, we deny the petition.

### BACKGROUND

Telex and TWX are two integrated teleprinter exchange services. Users of Telex and TWX transmit typewritten and data communications between subscriber stations. During the period relevant to our inquiry, WU provided domestic Telex and TWX service and the IRCs provided international service. The international messages were sent and received from five "gateway" cities on IRC equipment. To get the messages to and from the gateway cities and their domestic origin or destination, the IRCs used WU's domestic Telex and TWX service. The IRCs billed their customers for end-to-end service and then paid WU for any part of the message transmitted on WU's network. The controversy before us involves only the rates charged by WU for Telex and TWX service from August 1978 to April 1981.[1] Nevertheless, a review of recent ratemaking history is helpful to an understanding of this dispute.

WU began offering Telex service in 1961, and from 1961 to 1973 the IRCs received Telex service at the same rate charged to the general public. Br. for the FCC at 4. WU began offering TWX service in 1971 after it purchased the TWX system from AT & T. In purchasing the TWX system, WU inherited the existing AT & T/IRC contracts, which gave the IRCs a discount from the public TWX rates.

When the TWX contracts expired in 1973, WU informed the IRCs that it would continue to provide them with TWX service but without the discount from the public tariff. The IRCs refused to pay the full public tariff rates and attempts by WU to

---

1. WU's rates after April 1981 are being considered by the Commission in a separate rate-

making proceeding. *Final Decision,* 95 F.C.C.2d at 888.

compel payment failed. The dispute was settled in 1975 and 1976 when WU reached an individual settlement agreement with each of the IRCs. The settlement agreements encompassed both TWX and Telex rates. Under the agreements, WU agreed to provide Telex and TWX service to the IRCs at rates approximately five and one-half percent below the public tariff rates. These agreements were to expire on December 31, 1977.

On December 1, 1977, WU filed proposed revisions to its public Telex and TWX tariffs. The proposed revisions included a reduction in the number of rate bands and mileage bands, changes in the levels of usage rates, increases in remote extension charges and increases in directory listing charges. On December 2, 1977, WU filed a proposed tariff covering the rates previously established by the WU/IRC contracts. The main feature of this tariff was the elimination of the discount from the public tariff rates that the WU/IRC contracts had sometimes provided. The Commission reviewed WU's proposed revisions and tariffs in two separate designation orders.

In *In re The Western Union Telegraph Co.*, 67 F.C.C.2d 1420 (1978) (*Public Telex/TWX Order*), the Commission expressed concern that under the proposed public rates WU would earn excessive profits on Telex and TWX service which might be used to subsidize other WU services. *Id.* at 1424. The Commission therefore suspended the proposed public tariff for the full statutory period and set for investigation the issue of whether the public rates were just, reasonable and lawful within the meaning of sections 201 and 202 of the Communications Act of 1934, 47 U.S.C. §§ 201, 202. 67 F.C.C.2d at 1424.

The issues raised by WU's proposed tariff covering IRC rates were considered in

In re The Western Union Telegraph Co., 68 F.C.C.2d 98 *(IRC Telex/TWX Order)*, *reconsideration denied*, 69 F.C.C.2d 924 (1978), *petition for review dismissed sub nom. Western Union International v. FCC*, 652 F.2d 136 (D.C.Cir.1980). In the *IRC Telex/TWX Order*, the Commission made four determinations relevant to the case before us. First, the Commission determined that the version of section 222(e)(1), 47 U.S.C. § 222(e)(1), then in force[2] prevented WU from establishing rates for message traffic originating in the United States and bound for a foreign country (outbound traffic) by unilateral tariff. 68 F.C.C.2d at 113. Former section 222(e)(1) required a division of outbound charges under a formula agreed on by the parties or, if the parties could not reach an agreement, prescribed by the Commission. Thus, the Commission concluded that WU's unilateral tariff filing, insofar as it set rates for outbound traffic, violated section 222(e)(1). Second, the Commission determined that neither section 222(e)(1) nor section 201(a) prevented WU from setting rates for message traffic originating in a foreign country and bound for the United States (inbound traffic) by unilateral tariff. 68 F.C.C.2d at 113–14. However, the Commission concluded that the same issues concerning possibly excessive Telex/TWX earnings that caused it to suspend the public rates, likewise required the suspension of the proposed inbound rates. *Id.* at 119–20. Third, the Commission found "that Telex and TWX services, as utilized in connection with IRC traffic, are the same services provided to other Telex and TWX customers." *Id.* at 114. Therefore, it concluded that WU did not have a threshold duty to provide separate and independent cost justification for the IRC rates. Finally, the Commission stated that "IRC claims of cost differences between public and IRC

---

**2.** The version of section 222 in effect for the period relevant to the case before us, P.L. 78–4, 57 Stat. 5, was repealed by the new section 222. The new section 222 is section 2 of the Record Carrier Competition Act of 1981, P.L. 97–130, 95 Stat. 1687, and was designed to provide full competition in the record communications market by allowing the IRCs to provide domestic

service and WU to provide international service. *See Western Union Telegraph Co. v. FCC*, 729 F.2d 811, 814 (D.C.Cir.1984). The case before us does not require us to construe the new section 222. Thus, when referring to section 222 in this opinion, we mean former section 222.

Telex/TWX service [did] not automatically trigger a requirement that WU provide dis-aggregated support data in its filing." *Id.* at 116.

The Commission concluded that the issues raised in the *Public Telex/TWX Order* and the *IRC Telex/TWX Order* were interrelated and therefore consolidated the matters into a single hearing. At the consolidated hearing, the Commission was to investigate the lawfulness of both the public and inbound IRC Telex/TWX rates under sections 201–205 of the Communications Act of 1934, 47 U.S.C. §§ 201–205. In addition, the Commission stated that it would prescribe a just, reasonable and equitable rate formula for outbound Telex/TWX traffic under former section 222(e). 68 F.C.C.2d at 121. In determining the proper inbound and outbound rates, the Commission stated that the public Telex/TWX rates would serve as the benchmark. *Id.* at 122. The Commission also indicated that most of the cost differences which the IRCs alleged entitled them to a discount were "in the nature of non-capitalized, administrative and overhead expenses, which a carrier is normally permitted to average among customers of a particular service for purposes of rate design and cost accountability." *Id.* at 123. However, the Commission added that

> because there has in the past been some differential rate treatment of IRC and public Telex/TWX traffic, e.g., the contractual discounts, and because of the applicability of Section 222(e)(1), and the fact that separate IRC tariffs have been proposed, we shall consider in connection with our consolidated investigation whether any cost differences found to exist are of such magnitude as to render unreasonable WU's practice of averaging these costs over its public and IRC customers. Although WU will not at the outset be required to provide disaggregated IRC cost data, the Judge may require WU to

come forth with IRC data if it is needed to rebut a threshold showing by the IRCs of substantial cost differences between public and IRC Telex/TWX service.

*Id.* (footnotes omitted).

After the Commission set the matter for hearing, WU and the IRCs arrived at a settlement agreement which was submitted for Commission approval. The settlement agreement covered both inbound and outbound rates and provided an IRC discount. The Commission rejected the agreement because it questioned whether the agreement would settle the parties' longstanding conflict and whether the agreed-upon IRC discount was cost justified. *In re The Western Union Telegraph Co.*, 71 F.C.C.2d 621, 628–29, *petition for review dismissed sub nom. Western Union International v. FCC*, No. 79–1632 (D.C.Cir. Sept. 10, 1979). In rejecting the proposed agreement, the Commission authorized the ALJ to prescribe interim charges for outbound traffic if the circumstances warranted such action.[3]

After this Commission ruling, WU and the IRCs informed the ALJ that further negotiations had failed. The ALJ determined that the continuation of the status quo with respect to outbound rates was not in the public interest. *In re The Western Union Telegraph Co.*, FCC 79M–845 (July 24, 1979) (*Memorandum Opinion and Order Prescribing Interim Division of Charges for Outbound International Record Carrier Traffic), reprinted in* J.App. at 321, 322. Concluding that the IRCs had made no persuasive showing to support a finding of cost differentials, the ALJ set the public rates as the interim outbound rates to be charged the IRCs. However, recognizing that the Commission's ultimate finding of a just, reasonable and equitable rate could result in a lower prescribed rate for outbound traffic, the ALJ ordered WU to keep an accounting in

---

**3.** The rates for inbound traffic were originally set by the WU proposed tariff, which had become effective at the end of the suspension period in August 1978. *In re The Western Union Telegraph Co.,* 69 F.C.C.2d 924, 925 (1978), *peti-* tion for review dismissed sub nom. Western Union Int'l v. FCC, 652 F.2d 136 (D.C.Cir.1980). These rates were superseded by new rates in October 1978, which the Commission allowed to take effect without suspension. *Id.* at 930.

case refunds were required. The Commission refused to review this decision on the ground that it was interlocutory. *In re The Western Union Telegraph Co.*, FCC 79–812 (Dec. 13, 1979), *reprinted in* J.App. at 331, *petition for review dismissed sub nom. TRT Telecommunications Corp. v. FCC*, No. 79–2524 (D.C.Cir. Dec. 19, 1980).

In March 1982, the second ALJ involved in the case issued the *Initial Decision*.[4] The ALJ first determined that WU's public rates were unreasonable and unlawful because WU had used a discredited ratemaking theory, unauditable and unverifiable cost data and an inflated rate base. J.App. at 123–34. The ALJ then turned to the IRC discount. As an initial matter, the ALJ apparently disagreed with and therefore disregarded the Commission's determination that the burden rested on the IRCs to make a persuasive showing that substantial cost savings existed. J.App. at 135–36. The ALJ then noted that WU had made no affirmative showing of its own on the cost issue, but rather had only attacked the IRCs' presentation. Relying on the IRCs' cost data, the ALJ determined that they were entitled to a twenty-five percent discount from the public rate, even though he believed that a twenty percent discount was "probably more-in-line with the overall record." J.App. at 141 n. 54. Adopting the IRC proposed public rates and the IRC proposed discount, the ALJ concluded that the IRCs were entitled to a refund of $74,-621,407 plus interest from WU. J.App. at 142–47.

4. The original ALJ involved in the case conducted 37 days of hearings and received the parties' proposed findings of fact and conclusions of law. However, before issuing an initial decision he retired. *Final Decision*, 95 F.C.C.2d at 888. The second ALJ concluded that the record was inadequate and reopened the case. He then issued the *Initial Decision*.

5. We have considered the other objections raised by the IRCs and, in light of the discretion an expert agency has in ratemaking, *see, e.g., Permian Basin Area Rate Cases*, 390 U.S. 747, 800, 88 S.Ct. 1344, 1377, 20 L.Ed.2d 312 (1968); *FPC v. Hope Natural Gas Co.*, 320 U.S. 591, 602, 64 S.Ct. 281, 287, 88 L.Ed. 333 (1944); *United States v. FCC*, 707 F.2d 610, 615, 618 (D.C.Cir. 1983); *AT & T v. FCC*, 572 F.2d 17, 23–24 (2d

In the *Final Decision*, the Commission rejected almost all of the ALJ's findings and conclusions. First, the Commission reversed the ALJ's finding that WU had not justified its public Telex/TWX rates. The Commission concluded that WU had supplied adequate cost data and had used an acceptable cost allocation methodology. Based on that data and methodology, the Commission found that WU's rate of return on Telex/TWX was reasonable and lawful. *Final Decision*, 95 F.C.C.2d at 890–915. The Commission then reiterated why it had placed on the IRCs the burden to demonstrate a likelihood of substantial cost differences before it would require WU to submit disaggregated IRC cost data. Reviewing the record in light of this burden, the Commission concluded that the IRCs had not met their burden and that the degree of cost averaging practiced by WU was reasonable because the cost differences associated with providing service to the IRCs and the public were minor. *Id.* at 915–20. Having found the public rates reasonable and an IRC discount unwarranted, the Commission set aside the ALJ's refund order. *Id.* at 920. Finally, the Commission vacated the rate of return it had previously established for WU, stating that in the future Telex/TWX earnings would be reviewed on a case-by-case basis. *Id.* at 920–21.

In petitioning for review of the *Final Decision*, the IRCs raise a host of issues. We find no merit in any of their arguments and deem only two to warrant discussion.[5]

Cir.), *cert. denied*, 439 U.S. 875, 99 S.Ct. 213, 58 L.Ed.2d 190 (1978), we reject them. There is substantial evidence to support the Commission's conclusion that WU's public rates were reasonable and that the IRCs are not entitled to a discount. And, in reaching these conclusions, the Commission did not abuse its discretion. In sum, rather than "demonstrate *clearly and convincingly* a fatal flaw in the action taken ... [the IRCs] simply assert[ ] a difference of opinion with the Commission. There has been no meaningful showing that the Commission was erroneous in its conclusion." *Nader v. FCC*, 520 F.2d 182, 195 (D.C.Cir.1975) (quoting *Goodman v. Public Service Commission*, 309 A.2d 97, 101 (D.C.Ct.App.1973) (emphasis added, citations omitted)).

First, the IRCs argue that in prescribing the outbound rate the Commission failed to make the prerequisite findings that the rate was just, reasonable and equitable and in the public interest as required by section 222(e). Second, the IRCs argue that the Commission had no authority to prescribe an interim rate for outbound traffic.

## DISCUSSION

### 1. *Statutory Findings*

Relying on our decision in *AT & T v. FCC*, 449 F.2d 439 (2d Cir.1971) (*AT & T I*), the IRCs argue that the Commission's failure to use the precise words "just, reasonable and equitable" and "in the public interest" in prescribing outbound rates is a fatal defect in the *Final Decision*. In making this argument, however, the IRCs fail to recognize that in *AT & T I* a petition for rehearing was filed and the Commission still refused to make the required statutory findings. Because the Commission refused to make the statutory findings, we found its decision invalid.

Unlike the petitioners in *AT & T I*, the IRCs did not seek a rehearing by the Commission. As we have held in the past,

> petitioners are barred by 47 U.S.C. § 405 [ ] from raising in this Court questions which were not raised before the Commission in the first instance or in a petition for reconsideration. This bar precluding judicial review of issues that the FCC has not had the initial opportunity to consider is not a mere technicality. It is grounded on sound policy reasons.

*Gross v. FCC*, 480 F.2d 1288, 1290 n. 5 (2d Cir.1973) (citations omitted).

■ The IRCs argue that although they did not file a petition for rehearing, the Commission naturally had "an opportunity to pass" on an issue as basic as the proper statutory standard and therefore section 405 has been satisfied. We reject this argument and find support for our position in *Rogers Radio Communication Services v. FCC*, 593 F.2d 1225 (D.C.Cir.1978). In *Rogers*, the petitioners argued that the Commission's granting of an application to develop a communications system had to be reversed because the Commission had failed to state that granting the application "would serve the public interest, convenience and necessity" as required by 47 U.S.C. § 309(a). 593 F.2d at 1229. In refusing to consider this claim, the D.C. Circuit stated: "To the extent that appellants challenge the Commission's failure to articulate its finding of public interest, convenience, and necessity, their argument is foreclosed by their failure to bring this alleged error to the Commission's attention in a petition for rehearing." *Id.* (citation omitted). In reaching this result, the *Rogers* Court recognized that "[o]ne of the purposes of 47 U.S.C. § 405 is to afford the Commission the initial opportunity to correct errors in its decision or the proceeding leading to decision." *Id.*

In urging us to overturn the *Final Decision* because of the Commission's failure to articulate the statutory finding, the IRCs allege a formalistic error that could easily have been remedied by the Commission. The policy of section 405 contemplates that the Commission be given the chance to rectify such an error. By failing to seek a rehearing, the IRCs have denied the Commission this chance. Thus, like the court in *Rogers*, "we see no reason to review this alleged error when the Commission was given no opportunity for its correction." 593 F.2d at 1230.

### 2. *Interim Rates*

After the ALJ established the interim rates, the IRCs sought Commission reconsideration of its position that it had authority to establish such rates. The Commission declined to review the matter. *In re The Western Union Telegraph Co.*, FCC 79–812 (Dec. 13, 1979), *reprinted in* J.App. at 331. Thus, the Commission was given full notice before it entered the *Final Decision* that the IRCs questioned its authority to prescribe interim rates. The requirements of section 405 having been satisfied, we are free to consider the merits of the IRCs' argument.

■ The IRCs point out that former section 222(e) contained no provision granting the Commission authority to set interim

232

rates. Relying on our decisions in *AT & T I* and *AT & T v. FCC*, 487 F.2d 865 (2d Cir.1973) (*AT & T II*), they argue that no such authority may be implied. The Commission argues that it had the authority to set interim rates under section 4(i) of the Communications Act of 1934, 47 U.S.C. § 154(i), which gives it authority to "issue such orders, not inconsistent with this chapter, as may be necessary in the execution of its functions."

We find the IRCs' reliance on *AT & T I* and *AT & T II* misplaced. *AT & T I* is clearly inapposite. Although in *AT & T I* we did rebuke the Commission for decision-making on an incomplete record, the case concerned a final prescription under section 205(a), 47 U.S.C. § 205(a), and not an interim order. 449 F.2d at 450–53. *AT & T II* is also unhelpful to the IRCs' position. That case concerned the validity of a Commission requirement that AT & T obtain "special permission" as a precondition to the filing of a tariff. We found the "special permission" procedure to be unauthorized by and *inconsistent* with the statutory scheme of carrier initiated rates. Thus, we held that the Commission could not justify the procedure under section 4(i) because of the conflict with the statutory scheme. 487 F.2d at 877.

Unlike *AT & T II*, the Commission's use of section 4(i) in the instant case is consistent with the statutory scheme. The contract rates had expired more than eighteen months before the ALJ established the interim rates. In setting the interim rates, the ALJ found that the continued application of the expired contract rates was not in the public interest. Significantly, the ALJ required WU to keep an accounting in case the rates prescribed by the Commission were lower than the interim rates. Thus, any harm caused by the interim rates could be remedied. *See Western Union*, 652 F.2d at 144.

The Commission's use of its section 4(i) power in this situation and in this manner was both helpful and necessary to the execution of its function. If it were otherwise, the IRCs would have every incentive to refuse to negotiate with WU and to delay the resolution of the ratemaking process

for as long as possible in order to keep the benefits of the lower, expired contract rates. Therefore, we hold that under section 4(i) the Commission had authority to establish an interim rate until a final rate could be prescribed.

This conclusion is supported by the decision of the D.C. Circuit in *Lincoln Telephone & Telegraph Co. v. FCC*, 659 F.2d 1092 (D.C.Cir.1981). In *Lincoln Tel. & Tel.*, the FCC had established an interim billing and collection arrangement. The court agreed with the petitioner that there was no direct statutory authority giving the Commission power to establish such an arrangement. *Id.* at 1107. However, recognizing that the interim charges were subject to later adjustment and that a carrier needs to receive adequate compensation to continue to provide service, the court determined that section 4(i) provided authority for the implementation of the interim arrangement. *Id.* at 1107–08. We agree with the reasoning of the *Lincoln Tel. & Tel.* decision and believe that it fully supports the result we reach here.

We have considered all of the IRC's arguments and conclude that the Commission acted within the scope of its authority and that its decision is rational and is supported by substantial evidence. Therefore, the petition for review is denied.