**WASHINGTON GAS LIGHT COMPANY, Petitioner,**

v.

**PUBLIC SERVICE COMMISSION OF the DISTRICT OF COLUMBIA, Respondent,**

**People's Counsel of the District of Columbia, Intervenor.**

**Nos. 82–667, 83–1248.**

District of Columbia Court of Appeals.

Argued April 5, 1984.

Decided Nov. 2, 1984.

Monte R. Edwards, Washington, D.C., for petitioner. Lewis Carroll, General Counsel of the Washington Gas Light Company, Washington, D.C., and Carl W. Belcher, Springfield, Va., were on brief, for petitioner.

Lloyd N. Moore, Jr., Washington, D.C., with whom Roberta Willis Sims, Michael D. Newsom, and Michael E. Geltner, Washington, D.C., were on brief, for respondent.

James R. Choukas-Bradley, Washington, D.C., with whom Elizabeth A. Noel and Stanley W. Balis, Washington, D.C., were on brief, for intervenor.

Before MACK and TERRY, Associate Judges, and YEAGLEY, Associate Judge, Retired.

TERRY, Associate Judge:

Washington Gas Light Company (WGL) appeals from orders entered by the Public Service Commission (PSC) in two separate ratemaking proceedings. At issue in both appeals is the method of determining the amount of WGL's administrative and general (A&G) expenses to be borne by its District of Columbia customers. The formula which the PSC adopted in the first proceeding, Formal Case No. 722, and adhered to in the second, Formal Case No. 768, results in a substantially lower allocation to the District than that which WGL advocates. We find WGL's challenges to the formula unpersuasive and affirm the PSC's decisions in both cases.

I

A&G expenses are a component of WGL's operation and maintenance (O&M) costs. Apart from regulatory expenses, they fall into two categories: (1) pension and group insurance costs, and (2) "corporate service" costs. The first category reflects costs attributable to WGL's entire work force; the second consists of salaries and related expenses for management, secretaries, and clerks in WGL's corporate departments, such as accounting, legal, personnel, and payroll. Neither is directly attributable to any one of the three jurisdictions which WGL serves.[1] Thus, in a ratemaking proceeding, they must be allocated among the three before the portion to be recovered from the District's ratepayers can be determined.

From 1972 until 1976, the District's allocated share of non-regulatory A&G costs was equal to its percentage share of WGL's other O&M expenses, minus the cost of gas purchased. In 1976 WGL proposed, and the PSC agreed, to allocate them on the basis of only those O&M costs attributable to labor.[2] However, in a subsequent rate proceeding, Formal Case No. 686, the PSC's staff objected to continued allocation in this manner.

In that proceeding Seymour Manheimer, the PSC's chief accountant, testified that while the pension and group insurance A&G costs were related to labor expenses, the rest were not: they "could just as readily be related to plant, revenues, labor or some other factor." Further, he stated that differences in operating characteristics made the District's share of labor expenses significantly higher than its shares of therm (heat unit) sales and gas plant in service (capital investment), making it "unreasonable ... to accept labor as a 'just and reasonable' basis of allocating those A&G [costs] not directly labor related." While Manheimer had no objection to the continued use of O&M labor costs to allocate the pension and group insurance A&G costs, he recommended allocating the remaining A&G costs in accordance with a "modified Massachusetts formula," a simple average of the District's percentage shares of WGL's O&M labor costs, therm sales, and plant in service.[3] Use of this

---

1. WGL provides gas service to customers in the District of Columbia, Maryland, and Virginia.

2. This change was apparently made in response to sharply increased oil usage at the three-building Watergate complex, an aberration which raised the District's share of non-labor O&M costs.

3. The original Massachusetts formula was devised by that state's Department of Revenue to determine the taxable income of corporations doing some of their business in Massachusetts. It is the average of the percentages of a firm's Massachusetts capital investment and revenues and twice the percentage of its Massachusetts labor costs.

new formula, he testified, would "tend to minimize the distortions inherent in the use of a single factor such as labor," resulting in "a more equitable and reasonable allocation" than that which exclusive use of the O&M labor formula would produce.

In deciding Case No. 686, the PSC expressed its dissatisfaction with WGL's method of allocation. Echoing Manheimer's testimony, it observed that "[w]hile many A&G expenses are in fact labor related, some are not," and that of the possible measures of WGL's operations, "labor expense assigns the greatest share of A&G expenses to the District." On the other hand, although the PSC found the modified Massachusetts formula attractive "in theory," it was "reluctant to adopt it without further inquiry and analysis." Therefore, recognizing the established use of O&M labor costs to allocate A&G costs, the PSC allowed allocation by that method again. At the same time, it directed WGL either to allocate non-labor A&G costs in accordance with the modified Massachusetts formula in its next rate-change application, or to present such an allocation as an alternative to the formula it advocated. In either event, the PSC directed WGL to "present complete evidence addressing the advantages and any possible disadvantages" of the modified Massachusetts formula.[4]

WGL applied for another rate increase in June 1979, thereby initiating Formal Case No. 722. In its application WGL sought to continue allocating all A&G costs on the basis of O&M labor expenses.[5] The PSC, however, chose to allocate A&G expenses as its staff had proposed in Case No. 686, using the modified Massachusetts formula

to apportion the corporate service component and O&M labor costs alone for the rest. *In re Washington Gas Light Co.*, 39 Pub.Util.Rep. 161, 212 (D.C.P.S.C.1980). The PSC found that application of the formula to the corporate services part of A&G costs reduced the District's share of WGL's costs by $856,000.[6] The PSC denied WGL's application for reconsideration, and WGL appealed to this court.

Two years later we affirmed most of the PSC's order. *Washington Gas Light Co. v. Public Service Commission*, 452 A.2d 375 (D.C.1982). We concluded, however, that the PSC had "failed to explain the reasons for its choice of the so-called Modified Massachusetts Formula, the method it used to employ that formula, and the calculation of the amount of the adjustment to the District's share of A&G expenses," making it "impossible for us to determine whether the Commission's choice ... [was] reasonable." *Id.* at 387. More specifically, we found it impossible to tell what evidence, if any, the PSC relied upon in reaching its decision. *Id.* at 387 n. 18. Consequently, we remanded the case to the PSC "for an explanation of precisely what formula was used, why that formula was chosen, and how the amount of the adjustment was computed." *Id.* at 387.

On remand the PSC found that "A&G expenses in general bear no more relationship to labor costs than they do to therm sales, net plant, or any of the other factors which have been mentioned as possible yardsticks." Order No. 7877 at 6 (August 25, 1983). Further, the PSC stated that "[r]eliance on a single-yardstick formula would be particularly inappropriate" when

---

**4.** Order No. 6051, at 75–76 (February 13, 1979), adopted as part of Order No. 6060 (March 16, 1979), the PSC's final order in Case No. 686.

**5.** Curiously, neither the PSC's staff nor intervenor, the Office of People's Counsel, advocated application of the modified Massachusetts formula as proposed in Case No. 686. The staff favored a modified version of WGL's approach, while People's Counsel urged application of the formula to all A&G expenses, not just those which were unrelated to labor. Nevertheless,

both WGL and People's Counsel in their pleadings presented documentation of the results of applying the modified Massachusetts formula as Mr. Manheimer had proposed in Case No. 686.

**6.** In fact, it appears that the correct figure was only about $784,000. However, the percentage of corporate service A&G costs allocated to the District under both the modified Massachusetts formula (28.35%) and under WGL's method (33.39%) is undisputed.

that yardstick "assigned to the District of Columbia a greater percentage of costs than any other factor or composite of factors." Such a situation would indicate "that District of Columbia rates were subsidizing those of neighboring jurisdictions." *Id.* at 7. Finding that this was what had happened here, the PSC concluded that allocation of all A&G expenses according to O&M labor costs discriminated against District of Columbia customers by causing them to subsidize non-District customers.[7] The PSC concluded that the modified Massachusetts formula's simple average of the three factors—O&M labor costs, therm sales, and total gas plant in service—was the most appropriate formula for allocation of A&G costs not related to labor. *Id.* at 10–11.[8] The PSC denied WGL's application for reconsideration, and WGL again appealed to this court (Appeal No. 83–1248).

■ In the meantime, WGL had already obtained a further rate increase in Formal Case No. 768. Once again it had sought to allocate all its A&G costs on the basis of its O&M labor costs. Not surprisingly, the PSC rejected this approach and allocated the corporate service A&G costs on the basis of the modified Massachusetts formula. Order No. 7469 at 57–59 (February 9, 1982).[9] Although WGL's application for reconsideration challenged the PSC's adherence to the modified Massachusetts formula, pending the outcome of the appeals

in Cases Nos. 686[10] and 722,[11] the PSC did not address this question in its Order No. 7537 (April 12, 1982) denying reconsideration. WGL then appealed to this court (Appeal No. 82–667). When it also appealed from the PSC's decision on remand in Case No. 722, the two appeals were consolidated.

WGL contends primarily that there is no basis in the record for the PSC's adoption of the modified Massachusetts formula in Case No. 722 and its adherence to that formula in Case No. 768. It also contends that the PSC erroneously placed the burden of proof upon it and that use of the formula renders it incapable of recovering all its A&G expenses.

## II

■ This court's review of a ratemaking order by the PSC "is the narrowest judicial review in the field of administrative law." *Potomac Electric Power Co. v. Public Service Commission,* 402 A.2d 14, 17 (D.C.) (en banc), *cert. denied,* 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979); *accord, e.g., People's Counsel v. Public Service Commission,* 472 A.2d 860, 862 n. 3 (D.C. 1984). Our scrutiny is "limited to questions of law, including constitutional questions; and the findings of fact by the Commission shall be conclusive unless it shall appear that such findings of the Commission are unreasonable, arbitrary, or capri-

---

7. Although the PSC failed to cite its basis for these findings, it is clear from the context that it was relying on the testimony of Seymour Manheimer in the earlier proceeding.

8. The order also stated that WGL's formula "purported to be different" from the one it had advocated before but was in fact "no different in principle." Order No. 7877 at 7, 9. In reality, the formula was exactly the same, as the PSC had observed in its order prior to our remand. *See* 39 Pub.Util.Rep. at 209. The PSC may have been confused by WGL's heightened emphasis of the fact that the attribution of O&M labor costs is itself a function of many other factors, including therm sales and plant in service.

9. In Case No. 768 the District's percentage share of corporate service A&G costs is 28.82%, as opposed to the 33.25% share it would bear under WGL's method. Consequently, the modified

Massachusetts formula allocates about $830,000 less to the District than WGL's formula would.

10. In September 1982 we affirmed the PSC's decision in Case No. 686. *Washington Gas Light Co. v. Public Service Commission,* 450 A.2d 1187 (D.C.1982).

11. Contrary to the PSC's assertion, this was adequate to preserve the issue for appeal to this court. D.C.Code § 43–904(b) (1981) requires only that an application for reconsideration "stat[e] specifically the errors claimed as grounds for reconsideration." While a truly persuasive application might state more than WGL's did, another restatement of its position would have served little purpose in this instance.

cious." D.C.Code § 43–906 (1981). A party seeking review "carries the heavy burden of demonstrating clearly and convincingly a fatal flaw in the action taken." *Washington Gas Light Co. v. Public Service Commission, supra* note 10, 450 A.2d at 1194 (citations omitted).

■ At the same time, our deference is not total, for the PSC has a burden of its own: "the burden of showing fully and clearly why it has taken the particular rate-making action." *Washington Public Interest Organization v. Public Service Commission,* 393 A.2d 71, 75 (D.C.1978); *accord, e.g., D.C. Telephone Answering Service Committee v. Public Service Commission,* 476 A.2d 1113, 1119 (D.C.1984); *see* D.C.Code § 1–1509(e) (1981). It was because the PSC had not met this burden that we ordered a remand on the issue of A&G expenses in Case No. 722. *See Washington Gas Light Co. v. Public Service Commission, supra,* 452 A.2d at 387. We now conclude that, contrary to WGL's arguments, the PSC has met that burden in both of the cases before us.

■ The PSC "is not bound by a single regulatory formula, ... and may modify policy choices so long as it explains the basis for the change." *People's Counsel v. Public Service Commission,* 455 A.2d 391, 396 (D.C.1982). Upon remand, the PSC clearly articulated its rationale for adopting the modified Massachusetts formula. WGL's labor costs, it found, were not necessarily an accurate gauge of the distribution of A&G costs not directly related to labor; other factors, such as therm sales and total plant in service, were at least as reliable. Moreover, since the District's share of these other factors was significantly lower than its share of O&M labor costs, the PSC found it likely that use of labor costs to allocate these non-labor A&G expenses forced District of Columbia ratepayers to bear a disproportionate burden. These findings are the essence of the testimony of Mr. Manheimer in Case No. 686,

which the PSC incorporated into the record of Case No. 722.[12] As it recognized, part of the PSC's duty is to protect District ratepayers from subsidizing ratepayers in other jurisdictions. *Capital Transit Co. v. Public Utilities Commission,* 93 U.S.App. D.C. 194, 198, 213 F.2d 176, 180 (1954). In light of Manheimer's testimony, we cannot conclude that the PSC's findings on remand were "unreasonable, arbitrary or capricious," D.C.Code § 43–906 (1981), or were not "in accordance with the reliable, probative, and substantial evidence," D.C.Code § 1–1509(e) (1981). We must therefore affirm its decision in Case No. 722.

■ Because substantial evidence supported the PSC's findings in Case No. 722, we need not dwell on its imposition of the burden of proof upon WGL. We hold that the PSC erred, but that its error was ultimately harmless. Under D.C.Code § 1–1509(b) (1981), WGL had the general burden of persuasion in support of its application for a rate change. *Washington Public Interest Organization v. Public Service Commission, supra,* 393 A.2d at 77. But it was not also WGL's burden to justify the continued usage of an allocation formula which it had employed for several years. *See Public Service Commission v. FERC,* 206 U.S.App.D.C. 367, 377, 642 F.2d 1335, 1345 (1980), *cert. denied,* 454 U.S. 879, 102 S.Ct. 360, 70 L.Ed.2d 189 (1981) (holding that although a utility seeking a rate increase under the Natural Gas Act bore the burden of justifying the increase, it did not bear the burden of justifying "those portions of its filing that represent no departure from the status quo"). On the contrary, the burden of justifying a change fell upon the PSC staff. *Id.*

Thus we agree with WGL that the PSC improperly placed on it the burden of proof on the allocation issue. But it does not follow that WGL is entitled to reversal, for we do not find any prejudice resulting from the PSC's error. This is not a case in which no evidence was introduced on behalf of the O&M labor formula. To the

---

**12.** Order No. 7877 at 11 n. 13.

# 1170

contrary, WGL presented witnesses in both cases who testified vigorously in favor of retaining the O&M formula.[13] The question for us to decide is whether there was an evidentiary basis for the PSC's adoption of the modified Massachusetts formula. Since we hold that such a basis existed in Mr. Manheimer's testimony, the question of who bore the burden of proof is irrelevant.

■ In Case No. 768 WGL presented essentially the same arguments as it had in Case No. 722. It maintained that O&M labor costs were better suited to allocation of corporate service A&G costs, and that use of the modified Massachusetts formula would prevent WGL from recovering all its A&G expenses, since both Maryland and Virginia allocated on the basis of O&M labor costs. The PSC reasonably rejected these arguments in Case No. 722; we cannot say that it acted unreasonably in doing so once again in Case No. 768.

As we noted earlier, it is the PSC's duty to ensure that District of Columbia ratepayers do not subsidize ratepayers in other jurisdictions by not making them bear more than their rightful share of WGL's expenses. *Capital Transit Co. v. Public Utilities Commission, supra,* 93 U.S.App. D.C. at 198, 213 F.2d at 180. While uniformity among Virginia, Maryland, and the District is indeed a valid goal if WGL is to recover all its costs, we think that uniformity must be subordinate to the rule of *Capital Transit.* If it were otherwise, the PSC might have to acquiesce in virtually any allocation of expenses approved by either Virginia or Maryland, no matter how unfair to the District. This court could not tolerate such a result.

■ WGL also maintains that, because the PSC allows Potomac Electric Power Company to allocate all its nonregulatory A&G costs on the basis of its O&M labor costs, it must allow WGL to do so as well. We disagree. The PSC may treat the two utilities differently as long as it

can articulate a rational reason for such treatment. As we have already concluded, it has done so.

*Affirmed.*

13. See the testimony of James McCabe in Case No. 722 and James Myers in Case No. 768.